**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                   )
EUGENE NYAMBAL,                    )
                                   )
            Plaintiff,             )
                                   )
        v.                         )   Civil Action No. 15-2238 (EGS)
                                   )
STEVEN MNUCHIN, _in his official_  )
_capacity as Secretary of the_     )
_United States Treasury and_       )
_United States Governor at the_    )
_International Monetary Fund_,      )
                                   )
            Defendant.[1]          )
_____  )

## MEMORANDUM OPINION

When Eugene Nyambal worked for the International Monetary
Fund ("IMF") as a Senior Advisor to one of the IMF's Executive
Directors he raised concerns within the IMF regarding funding
the IMF planned to provide for a mining project in Cameroon. Mr.
Nyambal alleges that as a result of raising those concerns he
was subjected to a campaign of retaliation perpetrated by the
IMF. That retaliation included termination of his employment at
the IMF. The IMF has steadfastly refused to arbitrate Mr.
Nyambal's claims of whistleblower retaliation. Accordingly, Mr.
Nyambal petitions the Court, pursuant to the Administrative
Procedure Act ("APA"), 5 U.S.C. § 701 _et seq._, and the mandamus

---

[1] Steven Mnuchin has been substituted as the named defendant
pursuant to Federal Rule of Civil Procedure 25(d).

statute, 28 U.S.C. § 1361, to compel the Secretary of the
Treasury to comply with a particular provision of the
Consolidated Appropriations Act of 2012 and thereby require the
IMF to implement whistleblower protections, including the
convening of an external arbitration to adjudicate Mr. Nyambal's
claims of whistleblower retaliation. The Secretary has moved to
dismiss Mr. Nyambal's complaint for lack of subject matter
jurisdiction and for failure to state a claim upon which relief
can be granted. Upon consideration of that motion, the response
and reply thereto, the applicable law, and for the reasons
discussed below, the Secretary's motion is **GRANTED**.

## I.   Background

Mr. Nyambal was employed by the IMF as Senior Advisor to
Executive Director Laurean Rutayisire, who represented 24
African nations on the IMF's Executive Board. Second Am. Compl.
("SAC"), ECF No. 5 ¶ 8.[2] As part of his role as Senior Advisor,
Mr. Nyambal was responsible for advising IMF member countries in
the course of economic aid negotiations and for safeguarding IMF
resources. *Id.* In 2009, the government of Cameroon sought $60

---

[2] Mr. Nyambal filed a first amended complaint, *see* First Am.
Compl. ("FAC"), ECF No. 3, and then filed the SAC, but still
appears to rely upon the FAC. *See, e.g.*, Pl.'s Opp. to Def.'s
Mot. to Dismiss, ECF No. 11 at 1. The Court will rely upon the
SAC for purposes of this Memorandum Opinion. In any event, even
if it relied upon the FAC, the Court's conclusions would not
change.

million in IMF funding, plus additional IMF credit, for a mining project. *Id.* ¶ 10. Pursuant to his responsibilities as Senior Advisor, Mr. Nyambal "concluded that Cameroon was not supplying adequate information to allow for a proper assessment of the project." *Id.* Specifically, Cameroon had not provided information regarding the identity of the Cameroonian stakeholders in the mining project. *Id.* That lack of information gave rise to Mr. Nyambal's "concerns" as to "the fraudulent nature" of the mining project. *See id.* ¶ 14. Accordingly, Mr. Nyambal "raised" his concerns about lack of transparency and potential corruption as to the mining project. *Id.* ¶ 2. But on June 25, 2009——"a few months after the IMF's approval of funding for the mining project" and within 24 hours of having raised his concerns regarding that project——Mr. Nyambal's employment at the IMF was "terminated without notice or explanation by Mr. Rutayisire." *Id.* ¶¶ 2, 11. The funding about which Mr. Nyambal raised concerns went forward "without adequate oversight" and "most of the $60 million in funding was eventually misappropriated through a complex money laundering scheme involving Geovic Mining Corp[oration]," *id.* ¶ 10, while Mr. Nyambal was left without a job at the IMF and, upon his termination, "was immediately denied access to his office," where his personal belongings were confiscated. *Id.* ¶ 11. Soon after his termination, while doing some banking at the Credit

Union located at the IMF, security guards "ejected [him] from the bank in full view of the public." *Id.* About four years later, on July 23 and October 9, 2013, Mr. Nyambal was denied access to a World Bank building. *Id.* ¶ 17. The World Bank denied Mr. Nyambal entry to its facilities based on its honoring of the IMF's "Do Not Admit" list, on which Mr. Nyambal had been included. *See id.* ¶ 21.

Mr. Nyambal alleges that the abrupt termination of his employment at the IMF and his subsequent ejections from IMF and World Bank facilities constitute "a campaign of retaliation" against him perpetrated by the IMF because he raised concerns within the IMF regarding the funding for the Cameroonian mining project. *Id.* ¶ 2. Between 2009 and 2011, the IMF conducted two investigations related to the mining project, *id.* ¶ 12, but it has never permitted Mr. Nyambal to assert his claims of whistleblower retaliation in an external arbitration. *See id.* ¶¶ 4, 17, 19-20. Seeking to have those claims adjudicated in an external arbitration, Mr. Nyambal petitions this Court, pursuant to the APA, *id.* at 1 (citing 5 U.S.C. §§ 555(b), 706(1), 706(2)(A), 706(2)(C), 706(2)(D)) and the mandamus statute, *id.* (citing 28 U.S.C. § 1361), to issue a writ of mandamus compelling the Secretary of the Treasury to comply with a particular provision of the Consolidated Appropriations Act of 2012 and thereby order the Secretary to, in turn, "require the

4

IMF to implement whistleblower protections, including the convening of an independent adjudication of [Mr. Nyambal's] complaints." *Id.* at 15. The provision of the Consolidated Appropriations Act of 2012 on which Mr. Nyambal relies states in full:

> The Secretary of the Treasury shall seek to ensure that the IMF is implementing best practices for the protection of whistleblowers from retaliation, including best practices for legal burdens of proof, access to independent adjudicative bodies, results that eliminate the effects of retaliation, and statutes of limitation for reporting retaliation.

Consolidated Appropriations Act of 2012, Pub. L. No. 112-74, div. I, tit. VII, § 7071(c), 125 Stat. 786, 1255 (hereinafter "section 7071(c)").

The Secretary has moved to dismiss this case on various grounds under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See generally* Def.'s Mot. to Dismiss, ECF No. 9; Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem. Supp."), ECF No. 9. Mr. Nyambal has opposed that motion, *see generally* Pl.'s Opp. to Def.'s Mot. to Dismiss ("Pl.'s Opp."), ECF No. 11, and, subsequent to the filing of the Secretary's reply brief, has filed a "supplement" to his opposition to the Secretary's motion to dismiss. *See generally* Pl.'s Suppl. to Opp., ECF No.

13. The Secretary has moved to strike Mr. Nyambal's supplemental filing. *See generally* Def.'s Mot. to Strike, ECF No. 14. These motions are ripe for the Court's adjudication.

## II.  Analysis

### A.  Motion to Strike

The Secretary has moved to strike Mr. Nyambal's "supplement" to his opposition to the Secretary's motion to dismiss on the ground that it is an improper and unauthorized surreply. Def.'s Mem. in Supp. of Mot. to Strike, ECF No. 14 at 1. Specifically, the Secretary argues that Mr. Nyambal never sought the required leave of the Court before filing his surreply and, in any event, even if Mr. Nyambal had sought leave of the Court, the surreply should be stricken because it merely puts forth legal arguments and factual allegations that were already put forth in Mr. Nyambal's opposition or that could have been put forth in that opposition. *Id.* at 1-3. Mr. Nyambal counters that the Secretary has mischaracterized his supplemental filing as a surreply. Pl.'s Opp. to Mot. to Strike, ECF No. 15 at 1. He argues that his supplemental filing does not put forth any new legal arguments that were not made in his opposition and, instead, merely "adds factual context" so that the Court can assess subject matter jurisdiction. *Id.* at 1-2.

The Secretary has not mischaracterized Mr. Nyambal's supplemental filing: Because it was filed after the Secretary's

6

reply brief with the purpose of supplementing the opposition to the motion to dismiss, it is a surreply.[3] *See Schmidt v. Shah*, 696 F. Supp. 2d 44, 59 (D.D.C. 2010) ("Because these submissions were filed after Defendant submitted his reply brief, they are surreplies not authorized by the Local Rules."). "[B]efore filing a surreply, a party must request the Court's permission to do so, and must show that the reply filed by the moving party raised new arguments that were not included in the original motion." *Gebretsadike v. Travelers Home & Marine Ins. Co.*, 103 F. Supp. 3d 78, 86 (D.D.C. 2015) (internal quotation marks and citations omitted). Because Mr. Nyambal has not satisfied either of these requirements, the Court **GRANTS** the Secretary's motion to strike his supplemental filing.

### B.   Motion to Dismiss

The Secretary has moved to dismiss for a variety of reasons, arguing that: (1) Mr. Nyambal lacks standing under Article III of the Constitution because the Secretary's actions did not cause Mr. Nyambal's injury and because any action that the Court could compel the Secretary to take would not be likely

---

[3] In fact, it is Mr. Nyambal who has mischaracterized his own supplemental filing. In his opposition to the Secretary's motion to strike, Mr. Nyambal asserts that his supplemental filing is devoid of any legal argument that was not already raised in his opposition. Pl.'s Opp. to Mot. to Strike, ECF No. 15 at 1. That is inaccurate. *See, e.g.*, Pl.'s Suppl. to Opp., ECF No. 13 at 23-24 (making a legal argument relying on the Take Care Clause of the Constitution that does not appear in the opposition).

to redress Mr. Nyambal's injury, Def.'s Mem. Supp., ECF No. 9 at
10-13; (2) Mr. Nyambal's claim is nonjusticiable under the
political question doctrine, *id.* at 14-16; (3) the mandamus
relief that Mr. Nyambal seeks is unavailable because he has not
demonstrated that he has a clear right to relief or that the
Secretary has a clear duty to act, *id.* at 16-18; (4) Mr. Nyambal
has failed to state a claim under the APA because the conduct
that he challenges is not subject to judicial review and because
the action he seeks to compel is not legally required, *id.* at
18-22; and (5) the Secretary is immune from legal process in his
capacity as United States Governor of the IMF. *Id.* at 22. The
Court concludes that Mr. Nyambal lacks Article III standing.
Accordingly, his complaint will be dismissed on that basis, and
the Court need not reach the Secretary's alternative arguments.

### 1.   Standard of Review

A motion to dismiss for lack of standing is properly
considered a challenge to the Court's subject matter
jurisdiction and should be reviewed under Rule 12(b)(1). *See*
*Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) ("[T]he
defect of standing is a defect in subject matter
jurisdiction."). To survive a Rule 12(b)(1) motion to dismiss,
"the plaintiff bears the burden of establishing jurisdiction by
a preponderance of the evidence." *Moran v. U.S. Capitol Police
Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Because Rule 12(b)(1) concerns a court's ability to hear a particular claim, the court "must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Rule 12(b)(6)." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011). In so doing, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, but the court need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001). In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Scolaro v. D.C. Bd. Of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### 2.   Mr. Nyambal Lacks Standing

Standing "is an essential and unchanging predicate to any exercise of . . . jurisdiction" by an Article III court. *See Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 814 (D.C. Cir. 2006) (internal quotation marks omitted). "[T]he

irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. "First, the plaintiff must have suffered an injury in fact——an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks and citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of——the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (internal quotation marks and alterations omitted). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks omitted).

For purposes of his motion to dismiss, the Secretary has assumed that Mr. Nyambal has suffered an injury in fact and, accordingly, has focused his arguments on the causation and redressability prongs of the standing inquiry. *See* Def.'s Reply, ECF No. 12 at 3 & n.3. The injury that the Secretary has assumed that Mr. Nyambal has suffered is "the effects of alleged IMF retaliation." Def.'s Mem. Supp., ECF No. 9 at 11. If that were the relevant injury in fact, it would be clear that Mr. Nyambal would fail to carry his burden as to the causation prong of the standing inquiry: The effects of the retaliation——*i.e.*, the

alleged destruction of Mr. Nyambal's "career, financial
standing, employability and reputation," SAC, ECF No. 5 ¶ 27—
can only be traced to the *IMF's*, not the Secretary's, actions of
terminating Mr. Nyambal's employment and preventing him from
accessing IMF and World Bank facilities. Having failed to
satisfy one of the three independent elements of standing, the
Court would have no need to carry its standing analysis any
further. *See Newdow v. Roberts*, 603 F.3d 1002, 1010 (D.C. Cir.
2010) ("The absence of any one of the[ ] three elements defeats
standing.").

Although the alleged financial- and career-related injury
is certainly the underlying substantive injury that Mr. Nyambal
*ultimately* seeks to address, for purposes of his request that
this Court issue a writ of mandamus compelling the Secretary to
take certain actions—namely, (1) to comply with section 7071(c)
and (2) to require the IMF to resolve Mr. Nyambal's claims of
retaliation in an external arbitration, *see* SAC, ECF No. 5 at
15—the relevant injury appears to be more procedural in nature:
that Mr. Nyambal has not been permitted to adjudicate his
retaliation claims against the IMF in an external arbitration.
But even taking that absence of arbitral process as the relevant
injury in fact, Mr. Nyambal is still unable to establish that he
has standing because he fails to satisfy the redressability

element of the relevant inquiry.[4] He fails to satisfy that
element for two reasons.

First, "[t]o satisfy this element, a plaintiff must show in
the first instance that the court is capable of granting the
relief sought." *Love v. Vilsack*, 908 F. Supp. 2d 139, 144-45
(D.D.C. 2012) (citing *Newdow*, 603 F.3d at 1010-11; *Swan v.
Clinton*, 100 F.3d 973, 976 (D.C. Cir. 1996)). Here, part of the
relief that Mr. Nyambal seeks is a writ of mandamus compelling
the Secretary to "require the IMF to implement whistleblower
protections, including the convening of an independent
adjudication of [Mr. Nyambal's] complaints." SAC, ECF No. 5 at
15. But the Court lacks the authority to compel the Secretary to
take those actions. Mandamus relief is only permissible when a
plaintiff demonstrates "(1) a clear and indisputable right to
relief, (2) that the government agency or official is violating
a clear duty to act, and (3) that no adequate alternative remedy
exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C.
Cir. 2016). Here, the provision on which Mr. Nyambal relies
merely directs that the Secretary "shall *seek* to ensure that the

---

[4] The Court assumes, without deciding, that the causality element
of the standing inquiry could be satisfied. *See Newdow*, 603 F.3d
at 1010 ("We will assume, without holding, that plaintiffs'
claimed injury is an injury in fact and that it can be fairly
traced to the conduct of the defendants. It is in the third
element, redressability, where we find two problems with
plaintiffs' case for standing.").

IMF is implementing best practices for the protection of whistleblowers from retaliation, including best practices for . . . access to independent adjudicative bodies." § 7071(c) (emphasis added). When "seek" is followed by "to" and an infinitive, as it is here, it means "to make an attempt" or to "try." *Seek*, Merriam-Webster Dictionary Online, https://www.meriam-webster.com/dictionary/seek (last visited March 27, 2017). Thus the Secretary's only clear duty under section 7071(c) is to *try* to get the IMF to implement best practices for getting whistleblower retaliation claimants access to independent adjudicative bodies. That limited duty forecloses this Court from issuing a writ of mandamus compelling the Secretary to "*require* the IMF to implement whistleblower protections, including the convening of an independent adjudication of [Mr. Nyambal's] complaints."[5] *See* SAC, ECF No. 5

---

[5] The Court is similarly foreclosed from granting this portion of the relief requested under the APA. *See Citizens for Responsibility & Ethics in Washington v. SEC*, 916 F. Supp. 2d 141, 151 (D.D.C. 2013) ("The standards for APA relief under § 706(1) and for mandamus here are identical . . . ."); *see also Ctr. for Biological Diversity v. Brennan*, 571 F. Supp. 2d 1105, 1124 (N.D. Cal. 2007) ("Where the relief the plaintiff is seeking is identical under either the APA or the mandamus statute, proceeding under one as opposed to the other is insignificant.") (citing *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997)). To the extent that the Court's analysis here veers into a merits inquiry, *see People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1097 (D.C. Cir. 2015) (describing the assessment of whether an agency "has a policy of non-enforcement that constitutes agency action unlawfully withheld, in violation of

at 15 (emphasis added). Accordingly, because this Court lacks
the authority to grant a portion of the relief that Mr. Nyambal
has requested, he fails to satisfy the redressability prong of
the standing inquiry. *See Lozansky v. Obama*, 841 F. Supp. 2d
124, 132-33 (D.D.C. 2012) (holding that "[p]laintiffs . . . lack
standing because the Court cannot issue the requested writ of
mandamus, and thus cannot redress the [alleged] injury").

Second, the Court does not doubt its authority to provide
the other portion of the mandamus relief that Mr. Nyambal
requests—namely, compelling the Secretary to "comply with
[section 7071(c)]" by trying to ensure that the IMF implements
best practices for the protection of whistleblowers from
retaliation, including best practices for access to independent
adjudicative bodies, *see* SAC, ECF No. 5 at 15—but this relief
is not likely to redress Mr. Nyambal's alleged injury of not
having been given arbitral process by the IMF. *See Newdow*, 603
F.3d at 1011 (the plaintiffs' "second redressability problem is
that declaratory and injunctive relief against the defendants .
. . would not prevent the claimed injury"). "Redressability

---

section 706(1) of the APA" as a "non-jurisdictional question"),
and thus improperly fails to "assume the merits of [Mr.
Nyambal's] claim when determining whether standing exists," *West
Virginia ex rel. Morrisey v. U.S. Dep't of Health & Human
Servs.*, 827 F.3d 81, 84 (D.C. Cir. 2016), the Court's analysis
would remain the same under a Rule 12(b)(6) lens: Mr. Nyambal's
claims pursuant to the APA and the mandamus statute would be
dismissed for failure to state a claim.

examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017) (internal quotation marks omitted). "The key word is 'likely.'" *Id.* (quoting *Lujan*, 504 U.S. at 561). Thus Mr. Nyambal must show that it is "likely, as opposed to merely speculative," that his injury——not having access to an arbitral forum for his retaliation claims against the IMF——will be redressed by a favorable decision. *See Lujan*, 504 U.S. at 561 (internal quotation marks omitted). In this case of third-party causation——where Mr. Nyambal "seeks to change the [Secretary's] behavior *only as a means* to alter the conduct of a third party, not before the court, who is the direct source of [Mr. Nyambal's] injury," *see Common Cause v. Dep't of Energy*, 702 F.2d 245, 251 (D.C. Cir. 1983)——"it is 'substantially more difficult' to establish redressability." *Talenti v. Clinton*, 102 F.3d 573, 577 (D.C. Cir. 1996) (quoting *Lujan*, 504 U.S. at 562). It is substantially more difficult because "standing to challenge a government policy cannot be founded merely on speculation as to what third parties will do in response to a favorable ruling." *Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1274 (D.C. Cir. 2007). When those third parties can exercise "broad and legitimate discretion the courts cannot presume either to control or to

predict," a court is generally unable to redress the alleged injury and, accordingly, standing is found wanting. *See Talenti*, 102 F.3d at 577 (internal quotation marks omitted).

As explained above, the most the Court can compel the Secretary to do is to *try* to ensure that the IMF implements best practices for the protection of whistleblowers from retaliation, including best practices for access to independent adjudicative bodies. If the Court were to order the Secretary to engage in the efforts called for by section 7071(c), reaching the conclusion that those efforts would bear the relief that Mr. Nyambal seeks——that the third-party IMF would actually implement best practices for access to independent adjudicative bodies and then would arbitrate Mr. Nyambal's retaliation claims——would require sheer speculation as to how the IMF would exercise its broad and legitimate discretion in response to the Secretary's efforts. When such "conjecture is necessary, redressability is lacking." *West*, 845 F.3d at 1237 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 43-44 (1976)).

Mr. Nyambal asserts that the United States is the only country in the IMF equipped with "a veto power"; that the Secretary is on the Board of Governors, which is the "highest decision-making body of the IMF"; that the Secretary's role is "to ensure that the IMF complies with applicable laws"; that the Secretary appoints a "U.S. Executive Director of the IMF to

oversee day-to-day operations"; and that that Executive Director
"has authority to request any investigation pertaining to the
IMF's governance." Pl.'s Opp., ECF No. 11 at 5-6. Assuming that
all of these assertions are true, the United States wields
significant authority at the IMF. Nevertheless, even with that
significant authority there is hardly a high likelihood that if
the Secretary were to make efforts to ensure that the IMF
implements best practices for the protection of whistleblowers
from retaliation that those best practices would *actually* be
implemented by the IMF and that Mr. Nyambal would get his
sought-after arbitration. Mr. Nyambal suggests that the
Secretary could use the United States' veto power or the United
States' votes in elections for the position of IMF Managing
Director to coerce the IMF into implementing best practices for
the protection of whistleblowers. *See* SAC, ECF No. 5 ¶ 5. But
even if the Secretary took these actions, Mr. Nyambal has
provided no explanation as to how such actions would *likely*
result in the IMF's implementation of best practices for the
protection of whistleblowers. The omission of that explanation
is particularly problematic given that there is "considerable
uncertainty" as to whether the actions that Mr. Nyambal suggests
the Secretary could take to coerce the IMF into implementing
best practices for the protection of whistleblowers "would aid
[him] . . . or would tend to drive [the IMF] into even greater

intransigence." *See Talenti*, 102 F.3d at 578 (internal quotation marks omitted). That explanation is one Mr. Nyambal was required to provide. *See Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004) (explaining that when redressability hinges on the independent choices of a regulated third party, "it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to . . . permit redressability of injury") (internal quotation marks omitted). Without it, the Court must conclude that Mr. Nyambal has not satisfied the redressability element and, accordingly, lacks the standing needed to pursue his claim. Accordingly, the Court **GRANTS** the Secretary's motion to dismiss.

## III. Conclusion

For the reasons stated above, the Secretary's motion to strike and motion to dismiss are **GRANTED,** and this case is dismissed with prejudice. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **March 29, 2017**